[No. 23120.   Department One.   June 4, 1931.]

*In the Matter of the Estate of* CAROLINE WREN,
*Deceased.*[1]

[1]Reported in 299 Pac. 972.

*H. W. Lueders,* for appellant.

*J. H. Gordon, W. H. Pratt, Ralph W. Thompson,* and *H. P. Jones,* for respondents.

PARKER, J.—There is presented for our consideration upon this record two appeals; one by Mrs. Nellie Parks, a niece and heir of Caroline Wren, deceased, seeking review of decrees settling the final account of the administrator of the estate, distributing the remaining property of the estate and partitioning a 320 acre tract of land thereof to her heirs; the other by Mrs. Parks seeking review of an order of the superior court for Pierce county rendered in the probate proceeding, adjudging William H. Pratt, her counsel representing her interests in the estate, to have a lien upon the funds of the estate which were awarded to her by the decree as an heir of Caroline Wren, deceased.

On April 1, 1929, Caroline Wren, a spinister, died intestate in Pierce county, being then a resident of that county. On April 23, 1929, U. S. Lodge was duly

appointed by the superior court for Pierce county administrator of her estate, since which time he has remained the duly qualified and acting administrator of the estate. He proceeded in due course with the administration until July 17, 1930, when he filed in the probate proceeding in the superior court his account and petition for the distribution of the remaining property of the estate, alleging, as he was then advised, that Caroline Wren left surviving her as her only heirs entitled to receive the remaining property of the estate Anna Dougherty, a sister, entitled to one-fourth of the property; Walter Wren, a brother, entitled to one-fourth of the property; Nellie Parks, this appellant, a niece, the only child of a deceased brother, entitled to one-fourth of the property; and Maude and Hubert Wren, the only children of a deceased brother, each entitled to one-eighth of the property.

Prior to that time, Mrs. Parks employed W. H. Pratt, a duly admitted and practicing attorney of this state, a resident of Tacoma, to represent her and care for her interests in the matter of the settlement of the account of the administrator and in the distribution of the remaining property of the estate. On July 18, 1930, Mrs. Parks, by her counsel, responded to the account and petition for distribution by filing in the probate proceeding her objections and her petition alleging

". . . that Walter Wren is not a brother of Caroline Wren, deceased, as set forth in the petition for distribution, nor is Walter Wren a blood relative of any kind of said deceased, nor is he entitled to inherit from said deceased or to be recognized and considered as an heir to the said estate of said deceased;"

and praying that the court so adjudge.

On August 18, 1930, the matter of settlement of the account of the administrator and of distribution came

regularly on for hearing, all interested parties appearing, including Mrs. Parks with her counsel. On August 29, 1930, following that hearing, the court rendered its decree settling the account of the administrator and decreeing the heirs of Càroline Wren entitled to the remaining property of the estate to be as alleged in the petition for distribution. It was by that decree further decreed, by consent of all parties in interest, Mrs. Parks, however, not waiving her challenge to the heirship of Walter Wren, that the 320-acre tract of land in Pierce county left by Caroline Wren be partitioned by dividing the same among the heirs. It was further ordered that, for the purposes of further hearing upon the question of partition, the matter be continued until September 11, 1930. On September 2, 1930, the court appointed three commissioners to examine the land and report to the court thereon touching the contemplated partition.

On September 11, 1930, the day set for the further hearing, the commissioners made and filed their report, stating therein, in substance, that the timber upon the land is so irregularly situated as to make division thereof impracticable with the timber thereon; that the timber should be sold and the proceeds thereof distributed to the heirs under the decree of distribution, and that the land then should be partitioned to the respective heirs in four different equal parts, describing each of such parts deemed by them to be of equal value; one of the four parts to be awarded to Maude and Hubert Wren, apparently assuming that such partition would be satisfactory to them without further partition as between themselves. At that time, Mrs. Parks, by her counsel, filed in the probate proceeding her objections to the report of the commissioners, protesting against the partition being made by sale of the timber, alleging that the land could be

divided equitably among the heirs by giving to each their proportion of the timber land and their proportion of the other land without sale of the timber.

The matter then being heard, all parties interested being present, including Mrs. Parks with her counsel, the commissioners being sworn as witnesses and testifying as to the relative situations of the timbered portions and the other portions, the court on that day entered its order to the effect that the partition should be made in the manner recommended by the commissioners, including the sale of the timber thereon, and appointed appraisers to appraise the value of the timber as a preliminary to its sale, and continued the matter for further hearing to September 23, 1930. Thereafter, sale of the timber was made accordingly for the cash price of $3,300, its appraised value, which was received from the purchaser by the administrator.

On September 23, 1930, the matter came on for further hearing, all interested parties being present, including Mrs. Parks with her counsel, when the court entered its decree of partition whereby the sale of the timber was confirmed and the land finally partitioned, subject to the removal of the timber by the purchaser, into four equal described parts which the court found to be of equal value, apart from the timber: One one-fourth described part being awarded to Anna Dougherty; one one-fourth described part being awarded to Walter Wren; one one-fourth described part being awarded to Nellie Parks; and one one-fourth described part being awarded to Maude and Hubert Wren in common; and the matter was continued for further hearing to October 3, 1930, for further final settlement of the account of the administrator because of expense incurred incident to the partition, to the end that the ultimate amount of money to be finally distributed to the heirs be determined.

On September 19, 1930, the employment of Mr. Pratt by Mrs. Parks being or about to be terminated, and other counsel being employed by her, he filed in the probate proceeding notice of his attorney's lien claim upon her portion of the moneys of the estate remaining in the hands of the administrator, to secure payment of his compensation for services rendered to her as her counsel in the accounting, distribution, and partition proceedings; and also filed his petition praying for the adjudication of his claimed attorney's lien, and an order of the court for payment of the balance due him for such services from the funds in the hands of the administrator belonging to Mrs. Parks. He then notified her by mail that he would bring his claim of lien on for hearing on October 3, 1930, before the court, that being the day set for the further hearing.

On that day, the matter coming on for hearing, together with the further final accounting set for that day, Mrs. Parks appeared with her newly employed counsel, filed her objections challenging the jurisdiction of the court generally to entertain Mr. Pratt's claim of lien in the probate proceeding, because of that being a question apart from the administration of the estate; and also filed her objections challenging the jurisdiction of the court for want of proper notice or process served upon her sufficient to bring such matter before the court; and also filed her answer responding to Mr. Pratt's notice of claim of lien and his petition for adjudication thereof, plainly drawing in question the merits of his claim.

These objections were by the court then considered and overruled, and, the matter being heard upon the merits, the court thereupon entered its final order adjudicating Mr. Pratt's lien claim, awarding to him the relief thereon prayed for by him, awarding to him as against Mrs. Parks $381.25, to be paid by the adminis-

trator from moneys in his hands belonging to Mrs. Parks as an heir of Caroline Wren, deceased.

■■ It is contended in behalf of Mrs. Parks that the trial court erred in deciding that Walter Wren is the brother and heir of Caroline Wren. This contention presents the question of fact as to whether or not he was the legitimate son of Charles Wren, the father of Caroline Wren, deceased. The trial judge apparently viewed the controlling facts touching the heirship of Walter Wren, and we think correctly, in substance, as follows:

Charles Wren's first wife died in January, 1859. Sometime thereafter, probably a year later, he commenced cohabitation with another woman as his wife, who bore him a son in July, 1862. That son is the Walter Wren who is in this probate proceeding decreed to be the brother and heir of Caroline Wren, deceased. A separation of this second union occurred, evidently about a year after the birth of Walter Wren, the woman at about that time deserting Charles Wren. No record is produced here evidencing their marriage or their divorce, though there is testimony of repute among the relatives pointing in some substantial measure to their marriage and to their subsequent divorce. Thereafter, Charles Wren married the mother of Caroline Wren, deceased, she being later born as the fruit of that union, and hence became the half sister of Walter Wren.

In February, 1864, Charles Wren made a will in which, among other things, this language appears: "I give and bequeath to my son Walter the remaining portion or 160 acres, more or less, of what is known as my donation land claim," referring to his donation land claim in Pierce county. That will was later, upon the death of Charles Wren, probated in the probate court of Washington territory for Pierce county.

72

Walter Wren was reared in the family of Charles Wren, and was generally regarded as the son of Charles Wren, according to common repute among the family and relatives, that fact seemingly having been unchallenged until very recent years.

The evidence seems to us to render it quite certain that Walter Wren is the natural son of Charles Wren as the fruit of the second assumed marital union of Charles Wren, and hence is the half brother of Caroline Wren. The presumption of law is that his father and mother were lawfully man and wife, and that he is their legitimate child. *Shank v. Wilson*, 33 Wash. 612, 74 Pac. 812.

The claim of Walter Wren as the legitimate son of Charles Wren has further support in the statute law of the territory of Washington as existing during the period of marital cohabitation of his father and mother. In 1854, the first legislature of the territory of Washington passed an act reading in part as follows:

"Sec. 1. Be it enacted by the legislative assembly of the territory of Washington that marriage is declared to be a civil contract. . . .

"Sec. 3. . . . All children born of persons living and cohabitating together as man and wife . . . shall for all purposes be legitimate."

That remained the statute law of the territory at least until 1866. See Laws of Washington territory of 1854, p. 404, and Laws of Washington territory of 1866, p. 80; the former remained unchanged at least until the enactment of the latter. Such was the law when Charles Wren and Walter Wren's mother were cohabiting, which cohabitation resulted in Walter Wren's birth.

These considerations lead us to the conclusion that the trial court correctly decided that Walter Wren is

in law the legitimate son of Charles Wren, and hence the legitimate half brother of Caroline Wren, deceased.

It is contended in behalf of Mrs. Parks that there is no authority in law for the court's ordering the sale of the timber separate from the land incident to the partitioning of the land. It seems to us that the broad partition powers which may be exercised by our superior courts in probate proceedings effectively negatives this contention. In Rem. Comp. Stat., § 1533, relating to distribution and partition in probate proceedings, we read:

"Upon the date fixed for the hearing of such final report and petition for distribution, or either thereof, or any day to which such hearing may have been adjourned by the court, . . . The court may . . . and finds the estate ready to be closed, cause to be entered a decree approving such report, find and adjudge the persons entitled to the remainder of the estate, and that all debts have been paid, and by such decree shall distribute the real and personal property to those entitled to the same. The court may, upon such final hearing, partition among the persons entitled thereto, the estate held in common and undivided, and designate and distribute their respective shares;

. . .

"If it shall appear to the court at or prior to any final hearing that the estate cannot be fairly divided, then the whole or any part of said estate may be sold

. . .

"The court shall have authority to make partition, distribution and settlement of all estates in any manner which to the court seems right and proper, to the end that such estates may be administered and distributed to the persons entitled thereto. No estate shall be partitioned, nor sale thereof made where partition is impracticable, except upon a hearing before the court and upon the testimony of at least three disinterested witnesses previously appointed by the court for the purpose of viewing such property to be partitioned or sold. The court shall fix the values of the

several pieces or parcels to be partitioned at the time of making such order of partition or sale; and may order the property sold and the proceeds distributed, or may order partition and distribute the several pieces or parcels, subject to such charges or burdens as shall be proper and equitable.''

It seems plain to us that, since ''the whole or any part of said estate may be sold'' to effect equitable partition, standing timber on the land can be lawfully sold to that end as well as some part of the land can be sold to that end.

It is contended in behalf of Mrs. Parks that the court erred to her prejudice in confirming the sale of the timber, granting to the purchaser the right to remove it within three years, and granting to the purchaser necessary right of way therefor over the partitioned land. The concluding portion of the above quotation from § 1533 seems to us to plainly authorize a burden of this nature to be put upon the partitioned land incident to equitable partition. See, also, 47 C. J. 500.

It is contended in behalf of Mrs. Parks that the proceedings leading up to the decree of partition were irregular, particularly in that the court appointed ''commissioners'' to examine the land and report to the court touching the partitioning and the manner of partitioning it. The argument is that our probate partitioning statute makes no provision for the appointment of ''commissioners'' in a probate partitioning proceeding. It is true that our probate partitioning statute does not, in terms, provide for appointment of ''commissioners'', but it is provided therein, as above quoted, that partition can be had

''. . . upon a hearing before the court and upon the testimony of at least three disinterested witnesses previously appointed by the court for the purpose of viewing such property to be partitioned or sold.''

It does appear that the so-called "commissioners" were appointed by the court, and each did testify at the hearing as required by the above quoted statute. To hold that this was insufficient would be to so hold merely because in the order of appointment they happened to be called "commissioners".

We are of the opinion that this technical irregularity was manifestly not prejudicial. Their appointment and their testimony was in substantial compliance with the statutory provision we have noticed.

It is contended in behalf of Mrs. Parks that the evidence touching the merits does not support the decree of partition. We deem it sufficient to say that we have reviewed the evidence and find it amply supports the distribution and partition as made by the trial court.

Some other claimed errors in the interlocutory proceedings and orders, thought to be drawn in question by the appeal, are presented and briefly argued in behalf of Mrs. Parks. We have examined all of these and deem them not of sufficient merit to call for further discussion here.

We now notice Mrs. Parks' appeal from the order establishing Mr. Pratt's claim of lien upon funds belonging to her remaining in the hands of the administrator. It is contended in her behalf that the court did not have jurisdiction in the probate proceeding to hear and adjudicate Mr. Pratt's lien claim.

As to the claimed want of jurisdiction of the superior court in a pending probate proceeding to determine controversies arising over claims of property, or liens thereon, belonging to the estate, as between those interested in the estate and strangers thereto, the law is settled by our decisions that the court has and may exercise such general jurisdiction when it effectively acquires jurisdiction over the persons of the

parties to such controversy in the probate proceeding, since our superior courts, in which estates are administered by probate proceedings, are courts of general jurisdiction. *Sloan v. West,* 63 Wash. 623, 116 Pac. 272; *In re Bell's Estate,* 70 Wash. 498, 127 Pac. 100; *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147.

As to the claimed want of jurisdiction over the person of Mrs. Parks and Mr. Pratt as parties to the attorney's lien claim controversy, of course Mr. Pratt voluntarily submitted to the jurisdiction of the court in the probate proceeding by filing his petition therein praying for the establishing of his lien claim. Mrs. Parks, it is true, challenged the court's jurisdiction over her person, because of her not being required by law to respond to Mr. Pratt's petition seeking the establishing of his lien claim in the probate proceeding, regardless of the nature of the notice or summons which might be served upon her to that end, and also because in no event was she served with proper summons or notice to so respond. We do not find in any of these filed objections to the jurisdiction of the court any reservation of special appearance; and besides, she, at the same time of filing those objections, filed her answer to Mr. Pratt's petition, responding to it upon the merits, without reservation of special appearance. Thus it seems plain to us that Mrs. Parks ultimately, voluntarily submitted herself to the jurisdiction of the court to the extent of enabling the court to lawfully proceed in hearing and determining Mr. Pratt's lien claim upon the merits.

Contention is made in behalf of Mrs. Parks that the trial court erred in refusing her a jury trial upon the question of the amount of compensation due from her to Mr. Pratt. The complete answer to this, we think, is that Mr. Pratt's claim and petition pre-

sented something more than the mere establishing of the amount due from her to him as a mere personal obligation on her part. The proceeding was clearly of equitable cognizance, and hence a court and not a jury problem; this because Mr. Pratt sought the establishing of his lien claim against funds belonging to Mrs. Parks in the hands of the administrator. This he was entitled to do under Rem. Comp. Stat., § 136, for the amount due to him from her. *Price v. Chambers,* 148 Wash. 170, 268 Pac. 143.

Contention is made in behalf of Mrs. Parks that the evidence does not support the award, in amount, made by the court in favor of Mr. Pratt. We have examined the evidence touching this question, and are well convinced that it supports the court's conclusion.

We conclude that the decrees and orders drawn in question by both of Mrs. Parks' appeals must be affirmed. It is so ordered.

TOLMAN, C. J., MAIN, MITCHELL, and HOLCOMB, JJ., concur.