[No. 31547. *En Banc.* December 14, 1950.]

*In the Matter of the Dissolution of* PRIEST RAPIDS
IRRIGATION DISTRICT.

THE UNITED STATES OF AMERICA, *Appellant*, v. PRIEST
RAPIDS IRRIGATION DISTRICT *et al., Respondents.*[1]

*Bernard H. Ramsey* and *Hart Snyder* (*A. Devitt Vanech*
and *John F. Cotter* of counsel), for appellant.

*Moulton, Powell & Gess* and *J. K. Cheadle,* for respondents.

*The Attorney General* and *E. P. Donnelly, Assistant,*
*amici curiae.*

HILL, J.—The question before us is whether the United
States, having by condemnation, and by purchase subsequent to the commencement of condemnation proceedings,
acquired all the lands within the Priest Rapids Irrigation
District, hereinafter called the district, is entitled to the net
assets of the district, when those assets consist of moneys
paid the district for its nonirrigation properties.

The district owned and operated a pumping plant, canals
and other irrigation properties, together with a power plant

[1] Reported in 225 P. (2d) 202.

and transmission lines used in part for the generation and transmission of power for the pumping of water for irrigation purposes and in part for the generation and transmission of additional power for commercial purposes.

February 23, 1943, the United States commenced an action under the second war powers act to condemn about 194,000 acres (for the Hanford atomic engineering project) by perimeter description, including all of the lands within the district (15,950.39 acres). On the same date, the United States obtained an order granting to it the right to immediate possession of all the property described, for military purposes. April 1, 1943, the United States took actual physical possession of the district's pumping plant, main canal and related irrigation properties, which made it impossible for the district to continue to provide irrigation water service for the lands within its boundaries, the purpose for which it had been organized and operated. October 1, 1943, the United States took actual possession of the power properties of the district.

It is these power properties that are responsible for the present litigation. As the condemnation proceedings came on to trial for the purpose of determining the amounts which the various landowners within the district were entitled to receive as compensation for their property, their interest in the valuable and profitable commercial power-producing properties of the district became a subject of controversy. To eliminate the necessity of proving, in each individual condemnation case, the value of those properties and the condemnee's proportionate share therein, with the probability of varying values being fixed by different juries, the able and distinguished judge of the United States district court before whom the cases were tried, the late Lewis Baxter Schwellenbach, devised what is referred to throughout the litigation as the "Schwellenbach formula" for the solution of the unusual and difficult problem presented. The formula involved an allocation of the value of the properties of the district between those used for irrigation and those used for nonirrigation (commercial power) purposes.

It was Judge Schwellenbach's position (affirmed by the ninth circuit court of appeals, *United States v. Priest Rapids Irr. Dist.*, 175 F. (2d) 524) that, when the United States acquired and paid for all the lands within the district, it also acquired and paid for all the irrigation properties of the district (they of necessity being considered in determining the value of the land), but that it did not pay for the nonirrigation (commercial power) properties belonging to the district. Speaking of the nonirrigation assets, Judge Schwellenbach said:

" 'The fact is that, in the first case which was tried, the landowner attempted to assert his claim to his proportionate share in the District's assets, the petitioner [Government] objected and I ruled against the landowner. The basis of this ruling was that in the trial for the purpose of determining the compensation to be paid for a separate tract, there was no room to try out also the value of that landowner's proportionate share of the District assets. He was not the owner of the legal title to the District assets. He had no right to assert a direct claim to his proportionate share. Furthermore, as a matter of procedure, if I had permitted each landowner to assert his claim in each separate trial, it would have resulted in chaos and interminable delay as a consequence of which this [these] cases never would have been completed. . . . it would have resulted in an absurd situation because the landowner in one case would have a jury fixing one value upon the District's assets and then the jury in the next case might place an entirely different value upon the District's assets. The awkwardness and the confusion which would have resulted was realized by counsel on both sides and dozens of cases have been tried since with the understanding that, at some time, the question of the right of the landowners to their proportionate share of the value of the District assets would be thrashed out.' " (As quoted in *United States v. Priest Rapids Irr. Dist., supra.*)

At Judge Schwellenbach's insistence, the United States instituted a proceeding to determine the amount it should pay for the nonirrigation (commercial power) properties of the district. It was necessary that someone represent the district in that proceeding, and, on a proper showing, the superior court for Benton county, in an action commenced

by a former landowner and the last elected directors of the district, which action is hereinafter referred to as cause No. 8035, made and entered an order August 1, 1946, appointing the last elected directors, B. Salvini and J. H. Evett, to function as such directors and to "do any and all things necessary to the defense by said district" in the condemnation proceeding. The *de facto* directors, through their counsel, made an effective presentation of the district's case, with the result that the United States was required to pay $473,-356 for the nonirrigation (commercial power) properties. After payment of the bonded indebtedness of the district, there remained $302,856, together with interest, for distribution on the dissolution of the district. It must be remembered, when reference is made herein to the net assets of the district available for distribution, that there are no assets available for distribution except this portion of the amount paid for the nonirrigation (commercial power) properties.

The distinction between the irrigation and nonirrigation properties of the district having been established by Judge Schwellenbach and affirmed in *United States v. Priest Rapids Irr. Dist., supra,* two basic problems were left for solution by the courts of this state: (1) How was the district to be dissolved or disorganized? and (2) Who was entitled to share in the net assets of the district?

The United States, conceiving that as owner of all the land in the district it was entitled to the entire amount available for distribution, filed an action in the Benton county superior court November 15, 1949, which action is hereinafter referred to as cause No. 9913, alleging that the statutes of the state of Washington make no provision for the dissolution of an irrigation district under the circumstances existing in this case, and that the United States would sustain a substantial pecuniary loss and irreparable damage if the district was not dissolved. It invoked the equity power of the court to appoint a receiver for the purpose of dissolving the district, paying all lawful claims, and distributing the net assets to the United States.

Thereafter, November 25, 1949, in cause No. 8035, a petition was filed by Salvini and Evett, the *de facto* directors who had maintained and established the right of the district to the award for its nonirrigation (commercial power) properties, alleging that the statutory proceedings for the dissolution of irrigation districts were not applicable to the present situation; and asking that the court decree that said district was in effect or *de facto* dissolved on or about February 23, 1943, and not later than April 1, 1943, and that the court administer the trust estate of the district and distribute it to the persons equitably entitled to share in it; and asking, further, that Salvini, Evett and R. S. Reierson be appointed as liquidating trustees, and that the court adjudge that those entitled to share in the assets of the district available for distribution are those persons who, by reason of their interest in lands located within the boundaries of the irrigation district, were members of the group which was really interested in the success of the district and had to meet the burden of said district prior to the disruptive action taken by the United States in pursuance of its war powers.

The superior court for Benton county entered an order fixing December 12, 1949, as the date of the hearing on the petition, and directing that notice be published and be served upon the United States and the state of Washington. The date of hearing was thereafter continued to February 20, 1950.

By agreement, cause No. 9913 and cause No. 8035 came on simultaneously for hearing before the superior court for Benton county, February 20, 1950.

All litigants were agreed that none of the four statutory methods for the dissolution of irrigation districts (Rem. Rev. Stat., §§ 7526 to 7530, 7531 to 7543, 7543-1 to 7543-33 [P.P.C. §§ 679-421 to -525]; Rem. Rev. Stat. (Sup.) §§ 7527-1 to 7527-3 [P.P.C. §§ 679-431 to -435]) were applicable to the existing circumstances.

All litigants asked that the Benton county superior court proceed under its inherent equity power to dissolve the district and distribute its net assets to those entitled to re-

ceive them. They were in marked disagreement as to who should control the liquidation (under the direction of the court) and as to who should receive the net assets.

The trial court's order in cause No. 9913 reads in part:

"Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the United States of America, plaintiff [appellant] herein, has no interest whatever in the assets of the Priest Rapids Irrigation District and has no basis for seeking distribution to the United States of the net assets of the District or for seeking the ancillary or incidental relief of appointment of a receiver; and accordingly, the plaintiff's complaint and petition for dissolution be and it hereby is dismissed with prejudice."

The United States appeals from that order.

Actually, the issue presented by the order appealed from is very narrow: Is the United States entitled to the net assets of the district on its dissolution? If so, there is merit in the government's contention that it should, in effect, control the liquidation and have the right to keep expenses at a minimum; if not, it has no right to control the liquidation, and there is no basis for its attempt to take the liquidation out of the hands of those whose efforts made possible the existence of the net assets which are available for distribution, despite the strenuous opposition of the United States.

We have no hesitancy in determining that issue contrary to the contention of the United States. We base our holding that the United States has no exclusive right to the net assets of the district on three propositions:

(1) When the United States, in the exercise of its war powers, made it impossible for the district to carry out the purposes for which it had been organized, the district was dissolved *de facto* as of that date (probably February 23, 1943; certainly not later than April 1, 1943).

(2) The owners of the lands within the district at the time of the *de facto* dissolution ( at least the owners of lands on which all assessments had been paid) had, as a result of that ownership, an interest in the nonirrigation (commercial power) properties of the district.

(3) The United States did not acquire that interest in

the nonirrigation properties from any landowner whose property it acquired solely through the condemnation procedure, as the extent and value of that interest was expressly excluded from the consideration of the jury when determining what such landowners were to be paid.

Not having acquired the interest in the nonirrigation properties of those landowners in the district whose property it acquired solely through the condemnation procedure, the United States did not have an exclusive right to the net assets of the district on its dissolution, and it had no basis for complaint when the superior court for Benton county dismissed cause No. 9913 and elected to proceed to dissolve the district and distribute its net assets in cause No. 8035.

Nothing further is needed to justify an affirmance of the judgment of dismissal in cause No. 9913.

We do not pass upon the question, even by inference, as to whether, when an owner of land in the district acquired an interest in its nonirrigation properties on the *de facto* dissolution of the district, and thereafter sold and conveyed his land to the United States, he thereby transferred his interest in the nonirrigation properties to the United States. If both such former owner and the United States come into court claiming a portion of the net assets on the basis of that interest, the court would, in the dissolution proceeding, determine whether the owner had transferred that interest to the United States or had retained it.

The superior court may well be right in that portion of the judgment appealed from wherein it adjudged and decreed "that the United States of America, plaintiff herein, has no interest whatever in the assets of the Priest Rapids Irrigation District," but it seems to us that the court went beyond the determination of the issue properly before it at the time the order of dismissal was entered, that issue being whether the United States was entitled to *all* the net assets of the district available for distribution. The portion of the judgment of the superior court quoted on p. 628 hereof will be modified to read:

"Now, Therefore, It Is Hereby Ordered, Adjudged and Decreed that the United States of America, plaintiff herein,

has no *exclusive* interest . . . in the assets of the Priest Rapids Irrigation District and has no basis for seeking distribution to the United States of *all* the net assets of the District or for seeking the ancillary or incidental relief of appointment of a receiver; and accordingly, the plaintiff's complaint and petition for dissolution be and it hereby is dismissed with prejudice." (Additions indicated by italics, deletion by series of periods.)

As modified, the judgment of dismissal of cause No. 9913 is affirmed. Respondents will recover their costs on this appeal.

BEALS, ROBINSON, MALLERY, SCHWELLENBACH, GRADY, HAMLEY, and DONWORTH, JJ., concur.

---

January 26, 1951. Petition for rehearing denied.