**UNITED STATES v. MOULTON & POWELL et al.**

**MOULTON & POWELL et al. v. UNITED STATES.**

**No. 12563.**

United States Court of Appeals
Ninth Circuit.

May 7, 1951.

A. Devitt Vanech, Asst. Atty. Gen., Bernard H. Ramsey, Sp. Asst. to Atty. Gen., John F. Cotter, Atty. Dept. of Justice, Washington, D. C., for U. S. A.

Moulton & Powell, Kennewick, Wash., J. K. Cheadle, Spokane, Wash., for Moulton & Powell et al.

Before POPE and HASTIE,* Circuit Judges, and GOODMAN, District Judge.

POPE, Circuit Judge.

Following the decision of this court in United States v. Priest Rapids Irr. Dist., 9 Cir., 175 F.2d 524, and pursuant to the mandate, the district court entered a modified judgment in that condemnation proceeding. The sum fixed in the judgment represented the balance of the compensation awarded. The judgment provided: "It is Further Ordered, Adjudged and Decreed that said deficiency judgment of $302,856.-00, together with interest as above ordered, and the whole thereof, shall be paid into this Court and remain subject to the orders of this Court until such time as this Court shall order the payment of the balance of the same to the Superior Court of the State of Washington, in and for Benton County, for the use and benefit of the Priest Rapids Irrigation District in liquidation proceedings to be maintained in said Superior Court, and It is further Ordered, Adjudged and Decreed that title to the hereinabove described interests in the above described properties be and the same is hereby vested in the United States of America, petitioner herein, as to the irrigation properties as of April 1, 1943, and as to the power properties as of October 1, 1943, which said title is free and clear of any and all charges, interests, claims, taxes, liens and encumbrances of any kind or character whatsoever."

On the same day that this judgment was entered the appellees and cross-appellants, Moulton & Powell and J. K. Cheadle, hereinafter called appellees, attorneys for the Irrigation District, served and filed their petition asking the court to enter an order directing the payment to them of attorneys' fees in the sum of $78,918.85 from the moneys to be paid into the registry of the court pursuant to the judgment. Attached to the petition was a copy of an agreement, purporting to have been executed on behalf of the Irrigation District by its President and Secretary, and by the petitioners, dated August 30, 1946, and providing for the representation of the district by the attorneys in the condemnation action for a contingent fee, stated to be a percentage of the amount by which the award should exceed the District's bonded indebtedness.[1]

---

* On assignment from Third Circuit.

1. Also attached to the petition was a copy of a purported resolution of the directors of the Irrigation District dated November 19, 1949, acknowledging full performance of the attorneys' contract, reciting that the $78,918.85 asked in the petition was owing, and consenting to

After hearing, the court ordered the sum of $55,000 to be withdrawn from the amount then on deposit ($422,252.80), and paid the petitioning attorneys. The United States has appealed, assigning error in allowing any amount whatever. By cross-appeal the petitioning attorneys specify error on the part of the court in not directing payment of the full amount stated in their petition.

The Government contends that the district court was without jurisdiction to fix and order payment of attorneys' fees, and that its action in so doing was erroneous. The appellees assert that since the representatives of the Irrigation District have consented to the payment of attorneys' fees out of the sums deposited in court, it was proper for the court to make the order and that the United States has no standing to object thereto or to prosecute this appeal. They say that the question whether the court had jurisdiction to make such an order as that here under attack was settled by this court's decision in United States v. Priest Rapids Irr. Dist., supra, for it is said this court's judgment, except for the modification ordered, affirmed and approved that part of the original judgment which directed that the amount of the judgment "shall be paid into this Court and remain subject to the orders of this Court until such time as this Court shall order the payment * * * of the same to the Superior Court of the State of Washington," etc. Particular attention is called to footnote 9 of this court's opinion in which the statement is made, "we think that the court did not err by directing in its judgment that the amount of the award should be paid into the lower court there to remain subject to the orders of the court", [175 F.2d 528.] etc. Hence, appellees argue, on the authority of O. F. Nelson & Co. v. United States, 9 Cir., 169 F.2d 833, that this court's approval of that part of the judgment which directs that the proceeds of

the condemnation award shall be held subject to the orders of the court, was a final determination of the jurisdiction of the district court which cannot now be questioned.

The point thus made by appellees is not of much assistance to this court, for assuming as we do, the right of the Government to challenge the order of the court below,[2] it is apparent that the problem before us is not merely whether the district court might make appropriate orders with respect to the disposition of the sums deposited with the court, but whether in making the particular order here in question, it acted correctly and in accordance with law and the rights of the parties.

The general power of the court to make appropriate orders for distribution of the sum deposited seems clear from the applicable procedural statutes. By § 258, Title 40 U.S.C.A., the practice and modes of proceedings in the court below, in this condemnation suit, must "conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held * * *."

The procedure for condemnation of property by the State of Washington in courts of that State is prescribed in §§ 891 to 900, inclusive, Remington's Revised Statutes of Washington. Section 898 provides in part that: "Any person, corporation, or county claiming to be entitled to any money paid into court, as provided in this act, may apply to the court therefor, and upon furnishing evidence satisfactory to the court that he or it is entitled to the same, the court shall make an order directing the payment to such claimant the portion of such money as he or it shall be found entitled to". This section, which is applicable here by virtue of the conformity provision mentioned, would appear to supply ample authority for the court to "make an order directing the

the payment of this sum from the sum to be paid into court.

2. As will presently be apparent, we find it unnecessary to pass upon the question of the Government's right to object. As to

the standing of the United States, compare United States v. Certain Lands in Town Hempstead, Nassau County, N. Y., 2 Cir., 129 F.2d 918, with North Coast R. Co. v. Hess, 56 Wash. 335, 105 P. 853.

payment to [a] claimant the portion of such money as he or it shall be found entitled to", wholly apart from the reservation made in the court's judgment of the power to make further orders respecting distribution of the award.

The question remains whether the appellees here have furnished evidence to show that they are entitled to the money which the court has ordered paid to them.

The Government contends that the appellees have no interest in this fund, and that it was error for the trial court to direct that they be paid therefrom. The Government bases its claim of error not only upon this asserted want of interest, but upon its claim that it is sole beneficiary of these funds because it is the exclusive owner of the lands within the District, contending that the trial court cannot direct payment of the appellees' fees from funds that belong to the United States.

■ As to whether the attorneys for the District, as such, had a recognizable interest in the judgment for the award, we note that in the State of Washington, where the action was prosecuted, an attorney has by statute a charging lien "Upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed, and date of filing notice." Remington Revised Statutes of Washington, § 136, subd. 4; Price v. Chambers, 148 Wash. 170, 268 P. 143; In re Wren's Estate, 163 Wash. 65, 299 P. 972.

■ It appears to be the settled rule that judgments rendered in federal courts in states where such charging liens are recognized by statute or local law, will be held subject to such liens. Lehigh & N. E. R. Co. v. Finnerty, 3 Cir., 61 F.2d 289, certiorari denied 287 U.S. 668, 53 S.Ct. 292, 77 L.Ed. 576; Byram v. Miner, 8 Cir., 47 F.2d 112, certiorari denied 283 U.S. 854, 51 S.Ct.

648, 75 L.Ed. 1461; Chancey v. Bauer, 5 Cir., 97 F.2d 293; Underwood v. Phillips Petroleum Co., 10 Cir., 155 F.2d 372. See the able and exhaustive opinion of Judge Pray in United States v. Hudson, D.C., 39 F.Supp. 797, dealing with the application of a similar attorneys' lien to a condemnation award in a case which upon this point is on all fours with the case before us.

■ We think that the petition filed by appellees was a sufficient compliance with the notice requirements of the Washington statute, and that hence under the authorities cited appellees had a lien upon the proceeds of the judgment which it was proper for the court to recognize.

■ We think also that the district court might properly determine that under Washington law the award here in question, (for convenience referred to as the award to the Irrigation District), was in fact a trust fund in the hands of trustees. The Supreme Court of Washington, upon an appeal dealing with the status of this particular District, In re Priest Rapids Irr. Dist., Wash., 225 P.2d 202, decided December 14, 1950, held that the District was dissolved de facto not later than April 1, 1943. It is there pointed out that when the condemnation proceeding was instituted, the District had no de jure directors and that in a proceeding brought for that purpose in the Superior Court for Benton County, the persons who appeared for and on behalf of the District in the condemnation suit were appointed by the court to "do any and all things necessary to the defense by said district". Since the trial court might properly find that this trust fund had come into being through the efforts of these trustees and the attorneys whom they had employed, the expense of the litigation, including the legal expenses incurred, were properly chargeable against the trust funds, under the doctrine of Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157, and Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. This rule, which recognizes the propriety of the allowance of counsel fees by way of "costs as between solicitor and client", has been approved by the Supreme Court of Washington in Monroe v. Winn, 19 Wash.2d 462, 142 P.2d 1022, which

relies upon and cites Sprague **v.** Ticonic Bank, supra.[3]

The Washington court has also held that a court in ordering disposition of the proceeds of a condemnation award pursuant to a statute similar to § 898, supra, has the duty of dealing with the fund in accordance with established principles of equity. North Coast R. Co. v. Hess, 56 Wash. 335, 105 P. 853.

We think therefore that the proper conclusion upon this aspect of the case is that arrived at in United States v. Hudson, supra, 39 F.Supp. at page 802, that "Whether it be considered a charging lien, an equitable assignment, or a plain interference on the part of the court in the interest of equity and justice, it does not appear that the court is prohibited from protecting counsel when the greater weight of the evidence discloses an agreement to pay them out of the award in question."

The Government further strenuously contends that since it has acquired in the manner pointed out in this court's former opinion all of the lands within the District, it is the sole beneficiary of the trust to which the fund in question belongs, and therefore it was inappropriate, improper and erroneous to deplete that fund for the purpose of paying attorneys whose whole undertaking was devoted to an attempt to oppose the Government in the condemnation proceedings.

The answer to this contention is to be found both in this court's decision in United States v. Priest Rapids Irr. Dist., supra, and in the decision of the Supreme Court of Washington In re Priest Rapids Irr. Dist., supra, which came before that court upon the appeal of the United States.[4] The same contention as to the Government's exclusive interest in the proceeds of the condemnation award was made in both those cases and rejected by both courts. We recognize, as this court did on the former appeal, the strength of the Government's position as a matter of logic, but the adoption by the district court of the so-called "Schwellenbach formula", which was approved in our earlier decision, was prompted by practical considerations. As fully explained in footnote 8 of this court's former opinion, the adoption of that formula followed naturally from action which the Government itself invited. The Government invited the ruling first when it resisted the efforts of the landowners to have all the District assets taken into consideration in determining values in the condemnation proceedings against individual tracts. It invited it again when the Government failed to take advantake of Judge Schwellenbach's offer to reopen these cases for the admission of the rejected proof and chose rather to file the new declaration of taking of those Irrigation District assets not devoted to irrigation.[5] It is not within our power to reopen the question thus previously settled.

3. For a general discussion of the doctrine of Trustees v. Greenough, see annotation in 9 A.L.R.2d 1132, p. 1150, § 5.

4. Holding that the United States has no exclusive right to the net assets of the District, the Washington court said, 225 P.2d at page 205: "The United States did not acquire that interest in the non-irrigation properties from any landowner whose property it acquired solely through the condemnation procedure, as the extent and value of that interest was expressly excluded from the consideration of the jury when determining what such landowners were to be paid."

5. When an irrigation district, constructing a power plant in order to provide power for pumping irrigation water, incidentally produces a surplus of power which it sells commercially, there is no logical reason for treating the landowners as any less interested in the commercial power facilities than in the irriagtion works and pumps. Both types of facilities add values to the land, the irrigation works through supplying water, and the commercial power business through providing cash revenues to be used to liquidate bonded indebtedness and to assist in the payment of operation and maintenance costs. Land within an irrigation district possessing such revenue producing facilities would appear to have an enhanced value. These apparently self-evident propositions serve only to make the Government's insistence on objecting to proofs of these values now seem somewhat pennywise. On the other hand, what it fails to collect from the distribution of the sum now in the registry of the court, may turn out to be fairly offset by what it saved in the condemnation of those lands.

It may well be that upon final determination of the matter by the Washington courts, it will be found that the United States, upon acquisition by purchase of lands within the District, became pro tanto a beneficial owner of the properties for which the award was made. We assume that the lands in the District acquired by purchase exceed in acreage those secured by condemnation. The appropriate court may finally determine that the United States is thus entitled to receive the greater portion of the sum awarded and now in the registry of the court.

We think the right to allowance of a fee, and the amount of the fee, is properly measured in so far as the amount recovered may have a bearing upon the value of the services, by the amount of the whole fund established through the efforts of the attorneys, undiminished by the fact that the adversary against whom the recovery is established, may own a major share in the enterprise. We think the principle to be applied is the same as that which determines the award of attorneys' fees out of funds recovered in a stockholders' action to enforce, in the right of the corporation, the return of property and rights to which a corporation is entitled. In such cases the bill is often brought by minority stockholders, and the wrongdoers who are joined as defendants may be the majority holders of stock, yet the amount of attorneys' fees allowed is properly measured by the whole recovery. Forrester & MacGinniss v. Boston & M. Co., 29 Mont. 397, 74 P. 1088, 76 P. 211; May v. Midwest Refining Co., 1 Cir., 121 F.2d 431, certiorari denied 314 U. S. 668, 62 S.Ct. 129, 86 L.Ed. 534.

We next consider the cross-appeal. The contention made that the court was obliged to recognize and enforce appellees' contract for fees to the full amount of the calculated percentage overlooks the fact that the contract for payment of attorneys' fees was not one between a *de jure* board of district directors and its attorneys, but rather one executed by trustees appointed by the Washington Superior Court. The court below might properly hold that such trustees were not possessed of the statutory powers of irrigation district trustees. Im-

plied in the court's order is the finding that the proper measure of compensation under the facts and circumstances here shown was the reasonable value of the services, rather than the contract sum stipulated by the trustees. There is no showing that the written contract of the trustees had been authorized by the court which appointed them. We cannot say upon this record that the trial court was in error in its determination of the amount of the award.

Accordingly, for the reasons here stated, the order here appealed from must be affirmed.